To my colleagues, y'all ready to forge ahead to the third case? All right. Thank you. I will call the case of Pinnacle v. Pinnacle. I'm going to step I guess we'll hear from Mr. Lee first. Good morning. Morning, Your Honors. May it please the Court. My name is Nicholas Lee, and I represent the appellant, Pinnacle Advertising and Marketing Group, Inc. There are two main issues to address. We're asking the Court to reverse the District Court's ruling on the appellee's motion for judgment as a matter of law as to appellee's amended cancellation counterclaim and its defensive latches. For cancellation, Royal Palm and Engineer Tax Services decided in this Court are instructive. The District Court was required to examine the entire record and delight most favorable to the appellant as the party that prevailed at trial and ask whether the evidence still points so overwhelmingly in favor of the appellee that the jury's verdict cannot stand. In other words, if a reasonable jury could have found in favor of appellant and that the marks are protectable, as the real jury did in this case, the mark must be upheld. Here the appellant was not. Can I ask you a quick question? Sure. I don't really think I understand the stipulation, the pre-trial stipulation here that the judge would decide the cancellation counterclaim sort of on his own. Where did that come from, and how does it kind of fit with what I think we know from Royal Palm and Engineer Tax Services? Under 15 U.S.C. 1119, it's the court, not the jury, who has the power to cancel the mark. And on that basis, the parties agree that it's the court who should decide on the issue of cancellation, not the jury. So the point was, is the point, in your view, of 1119 simply to operationalize a jury verdict, or perhaps, I suppose, at most, for the judge to decide something that the jury's verdict doesn't touch, but not to counterman the jury verdict? That's correct. The whole notion of the parties stipulating that the court should decide on the should ignore the findings of facts from the trial. And here, we contend that the court completely disregarded what the jury found, which was that marks are protectable and distinctive. So based on the the appellant was not required to, as in Royal Palm and Engineer Tax Services, the appellant was not required to show evidence of secondary meaning during the prosecution of the mark. This means that the marks are at least suggestive in the spectrum of trademark strength, which gives the stronger presumption of the two validity. Therefore, the marks are entitled to a rebuttable presumption of inherent distinctiveness. Here, we argue that the appellee failed to rebut the presumption of inherent distinctiveness. First, in the district court's ruling on the motion for judgment as a matter of law, there is no application of presumed distinctiveness. District court failed to even reference whether the marks are inherently distinctive or required distinctiveness. It was also error for the district court to rely on the dictionary definition, because the dictionary definitions were not in the trial record. The burden was on the appellee, and they failed to produce that as evidence in the record. And neither did the jury rely on that record in determining that the marks are distinctive. And also, the dictionary definitions do not show what the relevant consumers think of the marks. Counsel, can we go back to the cancellation counterclaim to be amended? Can you walk me through how that decision prejudiced your ability to prepare your case? I know that that decision was made 10 days before trial, but I'm just trying to get a sense of what you were already developing before that amendment was allowed, and whether there was any kind of overlap once that amendment came in. Well, the amendment of cancellation was never filed by the appellee. The district court allowed in within 10 days before trial, and that was after the parties have already completed summary judgment. And the appellant had already addressed that the cancellation was not even an issue, especially in view of the fact that the appellee did not file the amended counterclaim for cancellation. I'd like for you to concentrate on, I understand the timing was terrible. I understand that you had received notice that they might possibly file a motion, and then you thought that had been resolved. But talk to me about the actual prejudice as far as trial preparation, because I noticed that you didn't ask for an extension of time, delay the trial. Tell me what prejudice ensued. Well, we would have been able to file a subsequent summary judgment for cancellation, and the court denied that. And the cancellation, with respect to cancellation, we would have been able to provide some evidence to show that the mark, if it's not inherently distinctive, at least it has acquired distinctiveness, and we weren't able to formulate that evidence in time for trial. And here, it's also been prejudiced because the court was relying on dictionary definition. That was not part of the record. And so, in the first place, we agree that the amended counterclaim for cancellation should have never come into play. But the fact that it had, we felt that the burden was on the appellee to prove that the marks are descriptive, but they failed to meet that burden. Instead, the court actually had to go outside of the trial record to find that the mark is descriptive, and hence we're here today. Well, okay, let me just drill down on this a little bit more. So, I'm trying to determine the prejudice that you're wrong, but even if the cancellation counterclaim had not come in, you were already in the process of preparing discovery and getting ready for trial on the issue of distinctiveness, correct? That's correct. So, tell me how the amendment that allowed the cancellation counterclaim, how did that add to your burden going to trial, cause you to want to have to do something else? I'm trying to just get a sense of how you were already on the distinctiveness track, what burden was added to that? What prejudice came into play? Well, certainly, in terms of strategy decision for trial, cancellation was never an issue. So, it added more time for us to prepare for defense in the event that they bring in the argument for cancellation. And Pelley expressly was silent in its summary judgment as to whether or not the cancellation was even an issue. So, there was no way for us to consider whether or not that should be part of this trial, but for the fact that it was entered in 10 days before. Quickly, the problem with the cancellation is also that the jury has already found that the marks are distinctive and the district court ignored the findings by the jury and did its own analysis. And that's why we believe that it was prejudicial and harmed and it was an error for the court to rule as such. Quickly, jumping to the issue of latches, we believe that the delays should be measured from the time in which the appellant knows or should have known that it has a provable claim for infringement. Here, the court determined that the appellant knew of Pelley in but never addressed whether or not the appellant had a provable claim at the time in 2014. The facts bear out that it was... Didn't the 2014 episode though give you actual or at the very least constructive knowledge of customer confusion, the Honda episode? No, because it was just a just a passing reference about the other pinnacle and there was no at the time there was no way of and not to mention that during the trial testimonies, CEO of the appellee testified that they did not compete in that process in the bidding process. And moreover, they didn't even have a website at the time. So there was no way for the appellant to even look beyond to see who that other pinnacle was. We argue that some latitude should be given to the appellant to assess the infringement and the impact of pursuing a litigation. It is true the appellant was horrified that the adage listed in the hyperlink address back in January of 2015 was not theirs. However, the appellant immediately contacted AdAge to correct the mistake. That's completely reasonable behavior by a business person. Also in 2015 incident had nothing to do with what the appellee did, but had everything to do with the mistake by AdAge, which the client fixed immediately. All right, thank you, Mr. Lee. You've saved five minutes for rebuttal and we'll yes, we'll give you that time. Thank you. Good morning, Thomas Zeichman on behalf of the Appellee Pinnacle Advertising and Marketing Group LLC. May it please the court, the appellee respectfully requests that this court affirm the district court's orders allowing amendment of the cancellation counterclaim, the cancellation of the appellant's marks, as well as the lashes finding which barred the appellant's claims. The standard on review for amending a claim is abuse of discretion. In this case, and we cite the technical resource services case in the 11th Circuit 2000 opinion. And in this case, the district court had before it a proposed amended counterclaim, which we filed attached to our response. And the court reviewed that and determined that it could grant leave under Rule 15, which provides for that leave should be granted when justice so requires and has a liberal amendment policy that even allows amendments at and after trial. The district court noted the overlap that would take place in the issues. And based on that, it ruled that an amendment should be allowed further. The 11th Circuit requires a substantial reason to deny an amendment. And in this case, the appellant has not shown a substantial reason in in response to this amended counterclaim. They were prepared to ask for a motion for summary judgment, which could prevail as a matter of law with the facts that had been developed in the case at that point. So accordingly, there was not an abuse of discretion in granting leave to amend. Regarding the cancellation counterclaim, we disagree that it was a remedy that was only before the court, rather it was the entirety of the counterclaim. In the Royal Palm case, the actual counterclaim itself was tried by the jury. In fact, it was tried in front of Judge Middlebrooks, the same judge in this case, and they had jury instructions on cancellation and they had it on the verdict forms that cancellation was available. And that did not occur in this case. Judge Middlebrooks, who's I think a great judge, I mean, he said it cannot be discerned one way or the other whether the jury made any specific finding that the trademark was distinctive. And of course, right there on the face of the verdict form, it says it's distinctive and entitled to protection. So Judge Middlebrooks just made a mistake on that finding by the jury, didn't he? That portion does not line up with the jury verdict form. Or as my torts professor used to say, a shorter answer would be yes. Okay. However, the parties did, it shows that how the case continued to flow where an order was entered asking for findings of fact, even after the jury verdict was entered, an answer was filed by the appellants that a jury verdict after the jury verdict was entered. And that was all before the district court. And even recognizing... Is it your position that 1119 allows a district judge to ignore the findings of the jury and proceed to cancel a trademark? Uh, no, your honor. Our position is that there's a presumption that they had by virtue of their registration and that the cancellation factors that were considered are unique and were not necessarily before the jury as they weren't on their form. There were additional issues that the length of time that it had appeared on the federal register, which was under five years. And based on that, he could consider whether it should have been barred in the first instance. I guess the flip side of your response to Judge Martin's question, you said, look, you know, you've got to kind of see how this whole thing played out. Even after the jury verdict, there was, you know, there were findings of fact and conclusion or proposed findings of fact and conclusions of law about distinctiveness. But the flip side of that is, then what was the jury verdict form about? I mean, you know, the jury verdict form, and I assume it was preceded by jury instructions about distinctiveness. And I assume that the instructions were preceded by witness testimony about distinctiveness. What was all that about if in the end, under 1119, the judge was just going to do it on his own? Right. That is one of the unique aspects of this case is that we put the stipulation out there. There was a possibility to put the entire claim in front of the jury, which had occurred in other cases. But in this case, it's possible that it appears that the outcomes to proceed. But even with the jury's findings, Judge Middlebrooks, in his order, recognizes the presumption and cites extensively on why the mark ultimately should be found to be merely descriptive and should be canceled. In particular, unlike... He says he can't tell whether the jury found it was distinctive, when they clearly did. Right. But even with that issue within the order, he goes a step further and finds why he would have why he finds that it wouldn't have been... Was merely descriptive rather than distinctive. And he does acknowledge that he is, in effect, overturning the jury verdict on that portion and provide substantial reasons for doing so in that order. He says, to the extent my finding may be inconsistent with the jury's verdict. Well, if there's no may about it, I mean, it's completely opposite of what the jury found. Right. And the reason that he found that was based on his review of the expert testimony that found substantial dilution and third-party usage of the mark, including the expert that testimony provided. Was the jury verdict entitled to any presumption? Based on the way the party stipulated, we would argue that it's the same presumption that they would have been entitled to under the Royal Palm and Engineer cases. I don't know if this happened for anybody else, but you froze during that answer on my screen, so I didn't get your answer. Wasn't the jury verdict entitled to a presumption of correctness? Because the jury didn't have before it the possibility of cancellation, which they were not aware of, would be an outcome or could occur, then without the jury having that knowledge, I do not believe they should have the, without the complete picture of the cancellation counterclaim and what could be possible, they should not be entitled to a presumption of correctness. But you submitted the question to him. Is the trademark distinctive? Is it entitled to protection? I mean, I'm sure he had some input into the verdict form. Yes, Your Honor. But because of the way that it was tied into the separate issue of the cancellation counterclaim, if the, because the jury didn't have the entirety of what they could consider and the options available to them, and that may have impacted their deliberations, we believe that the court has, and the parties, agreed to separate that cancellation counterclaim. The agreement did not say, regardless of what the jury does, the judge can cancel the trademark. That's correct. That's correct, Your Honor. You know, I realize, like, it's a pretty good result for your client when they get sued for infringement and they end up getting the trademark of the other side canceled. But, you know, I think, I guess you can pick up on the fact that I think there are problems with what the wonderful Judge Middlebrooks did in this case. I just don't think you can say, I mean, either he didn't remember what the verdict form said or, I mean, I guess that's, he just didn't, didn't remember it. You know, they're busy down there. So, he said he couldn't, he couldn't tell whether they made any finding about distinctiveness and they clearly did. Right. Yes, I agree that that's inconsistent with the jury verdict form. The Judge Middlebrooks did go through and challenge that distinctiveness presumption that they would have been entitled to and including the expert testimony that brand names were a low priority for advertising companies, that there were 40 active businesses using Pinnacle Advertising within the United States. Additionally, there was evidence of a prior user who had registered the PinnacleAdvertising.com, a third party that had been utilizing the domain for decades. Additionally, the court noticed the appellant put forth a sworn statement that its clients were so sophisticated that there wouldn't be any confusion due to these third parties that they ultimately got their marks. Let me ask you just a quick question about the scope of the evidence that the district court should or shouldn't have considered in conducting this third party use analysis. I mean, isn't it sort of bound up with your contention that he was entitled to do this de novo? Because if in fact what he was doing was looking for substantial evidence in the jury verdict, then he really couldn't have gone out on his own and done sort of internet sleuthing. Right. I mean, he would have needed to limit himself to the record that was before the jury. Correct. So, I mean, the two are kind of sort of inextricably bound up together. That is correct. He the judge could not consider evidence outside of the jury what was available to the jury based upon his review of the case. And that's on the cancellation counterclaim. Additionally, judgmental Brooks, as part of the analysis, noticed the complete lack of any policing of the mark by the appellants. With regards to the debt to the latches defense, the district court correctly found and applied latches to bar the appellant's claims. The standard of review is an abuse of discretion. There is an unpublished opinion Groucho's franchise system. It's at 683 Fed Appendix 826 to the 2017 decision. In this case, the court um, latches has the three elements, a delay in the assertion of a right, the delay is inexcusable, and the delay caused prejudice. In this case, the court found that the triggering event occurred in January of 2014, which under the in the 11th circuit looked to the closest statute of limitations, which in this case is undisputed as four years under Florida law. And he found that January 2014 was the date at which the latches clock started. It was a meeting with the Central Florida Honda Dealers Association, at which time the appellant was pitching its services to hopefully obtain them. Um, as this dealers association as a client, the, uh, it was more than just a passing meeting based upon the record document 19, which was an injunction motion to enjoy my client. The appellee provides that there was one of the dealers association representatives asked if the two were related, and it was the appellant, according to their pleading, who was able to set the record straight. This this meeting was on the one hand important enough to act as a basis, according to the appellant to have an injunction entered against my client, the appellee. But now, with respect to latches, is not an important enough event to have started the clock. We find that position to be untenable. Further, the date was correctly established by a trial exhibit, which was a pitch book at document 279, which provides that that client was obtained in January of 2014, and therefore, that meeting had to have occurred before then. I see that my time is up. Can I just ask you one more question before you sit down? So, I'm looking at the transcript. Um, gosh, I don't know the date of when it happened, but it's this document number 235, where y'all are actually talking about the court deciding the issue of the, the cancellation of the trademark. And what is expressly, you know, put to the court by Mr. Grant is that it's, it was the remedy. You know, there was no discussion of the court making its own findings of fact or rejecting the findings of the jury. Was there, or am I, am I missing it? It was just, what I see is Mr. Grant saying the court gets to decide the remedy of cancellation. There was an earlier calendar call at document 235 at page 39, where... That's exactly what I've got in front of me, exactly that page, where Mr. Grant said, um, you know, it's a, it's an equitable remedy. Cancellation is an equitable remedy, which would indicate to me he's not suggesting the court, the court gets to reject the findings of the jury on cancellation. Right. I, I, I think the, the view is that because that's the remedy under the cancellation counterclaim is why that would go before the court. But I, I do acknowledge he used the word, uh, remedy, um, which is consistent with one, uh... Okay, but I guess really what I wanted to know is you're relying on the same page of the same transcript I'm relying on. Yes, Your Honor. Okay, thank you. Mr. Lee? Briefly touching base on the, the cancellation, the parties agreed to, uh, to have the cancellation decided by the district court does not mean that the parties agreed to vacate what was found by the jury. The finding of facts, uh, by the jury are binding to both the parties and to the court. And the fact that, uh, the district court did not, uh, consider that in, in its analysis to cancel, uh, was clear error. Um, it's the, the court should have applied the, uh, no reasonable jury standard under rule 50. Um, uh, and, and, and I'll talk, and, and the other reason why we believe that the cancellation should have been decided by the district court was there are other grounds for the district court to, to come to the conclusion that marks are, uh, marks, uh, to cancel the marks. Uh, there were at the time a fraud claim and, and certainly, uh, Judge Middlebrooks could have decided that the mark should be canceled on the fraud claim. And that would not have any effect as to the jumping up, uh, going to the latches issue. Again, we, we, we believe that the delay should have been measured from when we knew and what we knew, uh, whether we had had any provable claim for infringement. You do, Mr. Lee, I guess, acknowledge, right, that on the latches argument, you're kind of swimming upstream against a pretty stiff standard of review, right? I mean, it's on that issue. You agree with that? Yes. Yes, your honor. Uh, the, but the fact of the matter is January, 2014 could not have established that we, the appellant had a provable claim for infringement. Um, the, once again, it was a pitch for work as central Florida Honda, and the facts established that the appellee did not even participate in that bidding process. And not to mention it was the appellant who got the work, uh, with central Florida Honda. Um, the, the actual calculation of when the clock starts should really have been calculated from, uh, the ad age incident in January, 2015, when the Superbowl ad reference, uh, linked to the appellee's hyperlinked website. And, and that's when, that's the first time that in the that shows that the appellant actually had knowledge about the appellee who was actually in the advertising services. But as the record indicates, the, uh, it was, uh, it was determined that there was, they were not a direct competitor of the appellant because, uh, the CEO of the appellant went looking at the website, realized that the appellee was in the hospitality services. Whereas the appellant is, uh, in, in majority, uh, automotive industry advertising sector. So with, so calculating the, the clock from January, 2015, there should be a presumption against latches, not for latches. And, and certainly in the, uh, the district court's order, uh, uh, discussing the latches, the court did not discuss anything about the public interest. Public interest here clearly outweighs any prejudice by the appellee. We produced many evidence of actual confusions and the actual confusion is still continuing to this day. And the fact that the court failed to address the public interest element, uh, in, in its latches, uh, uh, determination, we find that that was in error. So in summary, uh, we believe that the cancellation was, uh, was in error because the court failed to, uh, weigh in the jury's finding of facts that the marks are distinctive. And with respect to the latches, we find that the calculation of when and what the appellant knew was in error because the appellant could not have known about the appellee back in January of 2014. And calculating the clock from January of 2015, clearly that's within the statute of limitation of four years. And there should be a consideration that there's a presumption against latches. And, and, and, and, and not to mention the fact that there's a, uh, public interest element of the latches analysis, which the court failed to address. Thank you, Mr. Lee. I appreciate the argument. Oh, I didn't mean to cut you off. You, are you done? Okay. All right. Uh, great. We've got your case. Uh, we will take it under advisement. Uh, Judge Branch, uh, Judge Newsome and I will be listening for your call. And, um, court is in recess until nine o'clock tomorrow morning. Thank you. Thank you.